USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4-30-21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In Re: Firestar Diamond, Inc.

20-cv-4169 (JGK)

20-cv-4698 (JGK)

<u>MEMORANDUM OPINION AND ORDER</u>

---

JOHN G. KOELTL, District Judge:

The appellants, Bank of India (London Branch) ("BOI-L"), Receivers of Firestar Diamond BVBA on behalf of Bank of India (Antwerp Branch) ("BOI-A"), Union Bank of India (UK) Ltd ("UBI"), and Bank of India, Bharat Diamond Bourse Branch ("BOI-BDB", collectively "Banks"), bring this appeal from a Memorandum of Decision and Order of the Southern District of New York Bankruptcy Court disallowing their claims against Firestar Diamond, Inc. (hereinafter "Debtor" or "Firestar"). For the reasons explained below, the order of the bankruptcy court is **vacated** and the matter is **remanded** to the bankruptcy court for further proceedings consistent with this opinion.

I

The following facts are drawn from the Appellant's Appendix, ECF Nos. 11-18 in 20-cv-4169, filed in conjunction with this appeal and are undisputed unless noted otherwise.

Firestar is an importer and wholesaler of jewelry products. A-11. On February 26, 2018, Firestar and two of its affiliates, Fantasy, Inc. ("FI") and A. Jaffe, Inc. ("A. Jaffe," collectively with FDI and FI, the "Debtors"), filed a petition under Chapter 11 of the Bankruptcy Code in the Southern District of New York Bankruptcy Court. A-5. Nirav Modi, directly or indirectly, is the majority shareholder of Firestar's parent company, Firestar International Limited ("FIL"). A-12. Approximately three weeks prior to the petition, Punjab National Bank filed a criminal complaint against Modi, alleging bank fraud, and India's Central Bureau of Investigation launched an investigation. A-15. This led to asset freezes and operational disruptions that affected the Debtors' businesses and led them to seek Chapter 11 protection. A-16. The bankruptcy court appointed an examiner to investigate the Debtors' involvement with the alleged fraud and, in his report, the examiner found substantial evidence to support the knowledge and involvement of the Debtors in the alleged fraud. A-248. The bankruptcy court also appointed a trustee to administer the Debtors' estates since June 2019. A-85.

The Banks' claims against Firestar originate from their dealings with three subsidiaries of Firestar, namely Firestar Diamond International Private Limited ("FDIPL"), Firestar Diamond BVBA, ("BVBA"), and Firestar Diamond FZE ("FZE,"

2

collectively, the "Affiliates"). The Affiliates traded merchandise with Firestar. See, e.g., A-433; A-491; A-662; A-745. The Banks extended credit to the Affiliates to fund their working capital. A-716, A-768, A-853. The Affiliates used their receivables, including those generated by sales of merchandise to Firestar, to secure the financing from the Banks. In some instances, the Affiliates designated the Banks as payees on the invoices issued to Firestar, directing Firestar to make payment directly to the Banks, see, e.g., A-780. In other instances, the Affiliates sold their invoices at a discount to the Banks. See, e.g., A-661. Some of these invoices remained unpaid at the time of the petition and those unpaid invoices form the basis for the Banks' claims at issue in this appeal.

Under the Bankruptcy Code, the court must disallow claims made by entities who received property that is recoverable or transfers that are avoidable, among other reasons, because such transfers are fraudulent or preferential, until such transfers are first returned to the estate. See 11 U.S.C. §§ 502(d), 544, 547, 548.

There was no allegation in this case that the Banks received payments that were fraudulent or preferential such that they need to be returned before the Banks can file claims in the bankruptcy. Instead, the trustee has alleged that Firestar made numerous transfers of money and merchandise to the Affiliates in

3

furtherance of the fraud. A-424; A-482; A-553. On that basis, the trustee has asserted that the transfers to the Affiliates were avoidable as fraudulent and preferential under sections 544, 547, and 548 of the Bankruptcy Code and section 276 of the New York Debtor and Creditor Law. A-426; A-484; A-556.

The trustee's arguments with respect to the Affiliates are undisputed. The core of the dispute among the parties in this appeal is what significance the trustee's arguments with respect to the Affiliates have to the Bank's claims. The trustee has argued that because the Banks' claims are based solely on amounts purportedly owed by Firestar to the Affiliates, they are subject to the same defenses as if the Affiliates were asserting them. Accordingly, the trustee has argued, the Banks' claims should be disallowed pursuant to Section 502(d) of the Bankruptcy Code as if they were asserted by the Affiliates.[1]

The Banks have challenged the trustee's characterization of the claims as being based solely on the amounts owed by Firestar to the Affiliates. Instead, the Banks have argued that they are owed money directly by Firestar based on Firestar's agreement to make payment to the Banks. Further, the Banks have argued that Section 502(d) does not apply because there is no allegation that the Banks have received fraudulent or preferential

---

[1] Section 502(d) of the Bankruptcy Code instructs the court to disallow claims from an entity that, among other grounds, is a transferee of a transfer avoidable under section 544, 547, and 548. 11 U.S.C. § 502(d).

4

transfers that are voidable under the Bankruptcy Code. Additionally, the Banks have argued that disallowance under section 502(d) "is a personal disability of a claimant, not an attribute of the claim." In re Enron Corp., 379 B.R. 425, 443 (S.D.N.Y. 2007) ("Enron II").[2] Under this reasoning, the Banks argue that their claims do not necessarily suffer from the same defects as if they were brought by the Affiliates.

In its Memorandum of Decision, the bankruptcy court granted the trustee's objections to the Banks' claims. In re Firestar Diamond, Inc., 615 B.R. 161, 171 (Bankr. S.D.N.Y. 2020). In its analysis, the bankruptcy court rejected the Banks' reliance on Enron II, according to which the disabilities of a claimant are passed on in an assignment of a claim, but not in a sale of a claim. Instead, the bankruptcy court held that Section 502(d) "follows the claim, not the claimant," regardless of how the claim is transferred. Id. at 168. Furthermore, the bankruptcy court adopted the trustee's characterization that "the [Banks'] claims are based on amounts owed to" the Affiliates and the trustee's conclusion that the claims would be subject to disallowance if the Affiliates filed the claims. Id. at 169. Given its conclusion that Section 502(d) disallowance follows the claims regardless of how the claim is transferred, the

---

[2] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

5

bankruptcy court determined that it need not decide whether the transactions underlying the Banks' claims were "sales" or "assignments." Id. at 170. The court went on to observe that the transactions "might not even be 'sales' protected from disallowance under Enron II" but were instead part of a secured loan. Id.

## II

On appeal, the Court reviews a bankruptcy court's factual findings for clear error and its legal conclusions de novo. Nat'l Union Fire Ins. Co. v. Bonnanzio, 91 F.3d 296, 300 (2d Cir. 1996). The Court may affirm on any ground that finds support in the record and need not limit its review to the bases raised or relied upon in the decisions below. See, e.g., In re Coronet Capital Co., No. 94-cv-1187, 1995 WL 429494, at *3 (S.D.N.Y. July 20, 1995).

## III

The Bankruptcy Code "requires a court to disallow an entity's claim against the bankruptcy estate if the estate is entitled to recover property from that entity, such as because of a voidable preference, but that entity has failed to first transfer this property back to the bankruptcy estate." In re

6

McLean Indus., 30 F.3d 385, 388 (2d Cir. 1994). Section 502(d) provides, in pertinent part,

> [T]he court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title."

11 U.S.C. § 502(d). It is undisputed in this appeal that any claims by the Affiliates against Firestar would be disallowed under Section 502(d) because the Affiliates have not transferred to Firestone any preferences they received under Section 544, 547, and 548.

There is disagreement among the courts about the applicability of Section 502(d) to transferees of claims. On one end of the spectrum is Enron II, on which the Banks relied in the bankruptcy court, and which held that Section 502(d) disabilities "are not attributes of the claim but rather are personal disabilities of individual claimants," 379 B.R. at 445, and "unless there was a pure assignment (or other basis for the transferee to step in the shoes of the transferor), as opposed to a sale of the claim, the claim in the hands of the transferee is not subject to . . . disallowance based solely on the conduct of the transferor," id. at 439. On the other end of the spectrum is the decision of the Third Circuit

7

Court of Appeals in In re KB Toys Inc., which held that "because § 502(d) permits the disallowance of a claim that was originally owned by a person or entity who received a voidable preference that remains unreturned, the cloud on the claim continues until the preference payment is returned, regardless of whether the person or entity holding the claim received the preference payment." 736 F.3d 247, 254 (3d Cir. 2013).

For the reasons articulated by the bankruptcy court and the Court of Appeals for the Third Circuit in KB Toys, a transferee of a claim is subject to the same burdens under Section 502(d) as the transferor. First, the text of the statute focuses on claims, not claimants, and "operates to render a category of claims disallowable—those that belonged to an entity who had received an avoidable transfer." KB Toys, 736 F.3d at 252. Second, this rule is consistent with the aims of Section 502(d), equality of distribution of estate assets and facilitating compliance with judicial orders. Id. "If a transferred claim was protected from disallowance, an original claimant who received an avoidable transfer would have an incentive to sell its claim and "wash" the claim of any disability." Id. Finally, the distinction between assignments and sales that Enron II relies on has no discernable basis in the Bankruptcy Code or claim trading

8

practice, see Firestar, 615 B.R. at 169-70 (reviewing commentary that showed that the terms "sale" and "assignment" are used interchangeably in the claim-trading industry), and also rests on state law definitions, which is itself problematic in the context of federal bankruptcy law, see KB Toys, 736 F.3d at 254 n.11.

Accordingly, if the Banks' claims are a result of a transfer from the Affiliates, the claims must be disallowed under Section 502(d) in the same way they would be disallowed if the Affiliates were asserting them.

## IV

The conclusion that a transferee of a claim is subject to disallowance under Section 502(d) on par with the transferor does not resolve this case. The Banks argue that they are asserting their own claims against Firestar that they obtained from transactions prior to Firestar's bankruptcy petition and that they did not acquire the claims they are asserting from the Affiliates. Because the bankruptcy court determined that it does not matter, as a matter of law, what type of transfer the Banks' claims resulted from, it concluded it need not determine whether the claims were transferred through an assignment or a sale, and also suggested—but did not conclude—that the transaction may not have been a transfer at all. Firestar, 615 B.R. at 170. In this appeal, the trustee suggested that the transactions between the

9

Affiliates and the Banks may have been pledges that were never actually realized. This lack of factual findings is problematic because the bankruptcy court rested its decision on the determination that "Section 502(d) applies to the Banks' claims." Id. at 169. However, Section 502(d) can only apply to a claim if the claimant meets the definition of Section 502(d) (such as by receiving a fraudulent or preferential payment from the debtor) or, pursuant to cases such as KB Toys, if the claim was transferred from an entity that itself would be subject to disallowance under Section 502(d). Because there is no allegation in this case that the Banks themselves received fraudulent or preferential payments from Firestar, the disallowance of their claims under Section 502(d) must be a result of a transfer of the claims from the Affiliates. But the bankruptcy court made no specific findings as to what exactly the Banks received from the Affiliates and how they received it. The Banks assert, for example, that they hold invoices that are directly payable by Firestar, and they deny that they actually obtained a "claim" within the meaning of Section 502(d) from the Affiliates. Accordingly, the bankruptcy court's suggestion that the claims may not have resulted from a transfer by either a sale or an assignment—a position that the trustee embraced on appeal—therefore raises the possibility that Section 502(d) does not apply at all, which is inconsistent with the bankruptcy

10

court's conclusion that the Banks' claim are disallowed under Section 502(d).

Without a characterization of the Banks' claims and how they are allegedly traced—or not traced—to claims by the Affiliates against Firestar, it is not possible to determine whether Section 502(d) applies. Such considerations will require further factual findings that the bankruptcy court should make in the first instance. See Enron II, 379 B.R. at 445 (remanding for further proceedings to determine the nature of claim transfers).

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the reasons explained above, the order of the bankruptcy court is **vacated** and the matter is **remanded** to the bankruptcy court for further proceedings consistent with this opinion.

The Clerk is directed to close all pending motions and to close this appeal.

**SO ORDERED.**

Dated:  New York, New York
        April 30, 2021

_____
**John G. Koeltl
United States District Judge**